30612. WILLIAMS *v.* SMITH.

DECIDED OCTOBER 19, 1944.

634

*J. H. Paschall,* for plaintiff in error.

*Y. A. Henderson, Mitchell & Mitchell,* contra.

GARDNER, J. ■ As to the demurrers: (a) It is earnestly argued that the description of the property, as set out in the original instrument which the defendant executed and delivered to the plaintiff, is too vague and indefinite to be the basis of a cause of action and that it does not measure up to the requirements of the Code, § 20-401 (4). We must construe the allegations of the

declaration and the instrument designated as an option together. In doing so, we must consider those allegations of the declaration which are well pleaded as being true. Parol evidence is admissible to clarify and explain ambiguities of a written instrument. *Davis v. Jones,* 153 *Ga.* 639 (112 S. E. 891). When we view the instrument in the light of the allegations of the declaration, we are of the opinion that it is sufficient in law to be the basis of a cause of action. As authority for this view we call attention to *Clark* v. *Cagle,* 141 *Ga.* 703 (2) (82 S. E. 21, L. R. A. 1915A, 317), and cit. Headnote 2 reads as follows: "Where a contract for the sale and purchase of a tract of land was dated at White Plains in this State, and described the property as the place of the vendor known as the 'Humphrey Place,' containing 330 acres, more or less, this description was not so vague and indefinite as to render the contract unenforceable. The description could be applied to its subject-matter by alleging and proving that the vendor had a described tract of land containing the number of acres mentioned, located near White Plains, in a named county, and known as the 'Humphrey Place,' and that this was the only place in that county known by that description." Practically the only difference between the description in the *Cagle* case and the case here is the acreage. During the course of the opinion the Supreme Court said: "While the description in the contract was rather meager, it was capable of being applied to its subject-matter by parol; and when taken in connection with the allegations of the petition, it was not subject to demurrer." Again, we call attention to a more recent case of our Supreme Court, *Blumberg* v. *Nathan,* 190 *Ga.* 64 (8 S. E. 2d, 374), in which a number of decisions on the question are reviewed. While the description in the instant case is not on all fours with the description in the cases mentioned, we are of the opinion that, as above stated, it is sufficient under the allegations of the declaration. The declaration alleges that the tract of land is in Gordon County, Georgia, and had been known as the Bishop Farm for fifty years. It is argued that the option does not state that the defendant owned the Bishop Farm. In view of the fact that the defendant gave the option to the plaintiff, we do not think that the mere failure to state specifically that the defendant owned the farm would materially change the option. Certainly we can assume that he had some connection with the

farm sufficient for him to give the option, and the allegations of the declaration state that he owned it. We therefore conclude that in overruling this feature of the demurrer the court did not err.

(b) Concerning the criticism in allowing the plaintiff to add a second count, we are of the opinion that this assignment of error is without merit. It is the practice, and legally permissible, to allege in one petition, in different counts, the breach of the same contract in different ways. *Dundee Woolen Mills* v. *Edison,* 17 *Ga. App.* 245 (3) (86 S. E. 414). In such a situation a general verdict is sustainable if any count is supported by evidence. *Reid* v. *Morrison,* 31 *Ga. App.* 613 (9) (121 S. E. 860). The court committed no error in overruling the grounds of the demurrers, both general and special, for any of the reasons assigned.

■ As to the general grounds, the evidence reveals that the plaintiff approached the defendant with a view of buying a half interest in the tract of land in question. The defendant stated that he did not wish to sell half of it, but would sell all of it for $6000, and that he would give the plaintiff an option on the property, and the plaintiff could sell half of it and keep half of it. No written option was given at that time, the defendant stating that his word was his bond. When the plaintiff approached a party to sell the property, the party inquired if the plaintiff had a written option, whereupon the plaintiff responded that he did not. The party then refused to look at the property until the plaintiff did have such an option. The next day the plaintiff drove 150 miles to the home of the defendant for the purpose of getting a written option. When he arrived at the home of the defendant and suggested that they get a lawyer to write an option, the defendant remarked that being so late in the day they would hardly be able to find a lawyer, and that the defendant had a timber option, which, if he could locate, he could write an option himself. The defendant called his wife, who acted as an amanuensis under the direction of the defendant, and wrote the instrument in question, which the defendant signed in the presence of the plaintiff. After signing it, the plaintiff paid him $10 in cash, received the option, returned to his home, and entered into a written contract of sale with Dr. W. D. Hall, a copy of which is attached to the declaration and is copied above. The plaintiff immediately wrote the de-

fendant of his sale of the property, and asked that a deed be executed. Whereupon the defendant wrote him that he could not make a deed because his son owned a half interest in the property. A copy of this letter is attached to the declaration and is set out above. The plaintiff went to see Hon. Y. A. Henderson, his attorney, who on March 13, 1943, wrote the defendant a letter, a copy of which is attached to the declaration, and which informed the defendant of the sale of the property by the plaintiff. In this letter he requested a deed and tendered the balance of the purchase-money. A copy of this letter is set out above. Some few days thereafter the defendant called at the office of the attorney and stated that he could not make a deed because the land was encumbered, and it would take him a year or more to get the title straightened out, but that if Dr. Hall would take it under these conditions he would convey it. Then there was further evidence to the effect that there was no deed on record to the defendant's son, and no instrument of any kind on record evidencing any encumberance on the property. There was ample evidence to the effect that the Bishop Farm, as set out in the option, is located in Gordon County, and had been generally known as the Bishop Farm for at least fifty years, and that it was the only farm in Gordon County that was so named.

The defendant testified in this connection that he signed the option; that the description in the declaration was a correct description of the Bishop Farm in Gordon County; and that he executed and delivered to the plaintiff the option describing the property as the Bishop Farm, and that at the time he signed it he intended it for the tract as more fully described in the declaration and known as the Bishop Farm. The defendant denied receiving $10 in cash, and also contended that in a conversation with the plaintiff at the time the option was executed, he informed the plaintiff that it would take him some time to clear up the title. The plaintiff denied any such conversation. There is evidence to the effect that Dr. Hall was a man of considerable means and amply able to respond to his contract. Dr. Hall himself testified that he was ready, willing, able, and anxious for the property in question and did offer to buy the same for $7500, but could not get a title. Such in substance is the evidence concerning the general grounds. The jury were authorized, from such evidence, to return a verdict for the plaintiff for the amount sued for.

■ Special grounds: (1) This ground assigns error because the court, over objection, admitted the option in evidence. In view of what we have said in the first division of this opinion concerning this instrument, this ground is without merit.

(2) This ground assigns error because the court, over objection, admitted in evidence the sales contract between the plaintiff and Dr. W. D. Hall. This instrument was admissible to show the contract of sale between the plaintiff Smith and the purchaser Hall in support of the allegations of count 2 of the declaration.

(3) This ground assigns error because the court admitted in evidence a letter written to T. W. Williams by Y. A. Henderson, an attorney for Dr. Hall on March 10, 1943, to the effect that J. A. Smith, had been to the office of Henderson concerning the contract of sale between Smith and Dr. Hall; that Dr. Hall was a client of Henderson's, and that he was ready to handle the transaction for Dr. Hall; that he had been informed by Smith that Williams would be in Calhoun [Georgia] the following Saturday. The letter requested Williams to come by Mr. Henderson's office, at which time the transaction would be concluded. The letter further stated that if for any reason Williams did not or could not come to Calhoun for the purpose of closing the transaction, he might execute a deed, attach a draft to it for the purchase-price, and send it to Henderson through the Calhoun National Bank—in such way and at such time the transaction would be concluded. This letter was admissible for the purpose of showing the good faith of the sale to Dr. Hall, and the bona fides of the willingness, the ability, and the offer on the part of Dr. Hall to purchase the property. There is no merit in this assignment.

(4) This ground assigns error because the court, over objection, admitted in evidence the letter to the defendant written by attorney Henderson dated March 13, 1943. This letter was attached to the declaration and is hereinabove set out. The objections argued against this letter are that it was immaterial, irrelevant, prejudicial, and further because it required of the defendant the impossible, in that he could not have received the letter and complied with its demands by the 15th. There was evidence to sustain the proposition that the letter could have reached the defendant the same day it was written, and that he could have complied with the request therein stated on or before the 15th, the date the con-

tract of sale between Dr. Hall and Smith expired. Furthermore, the evidence shows that the distance between Calhoun and the defendant's home, Etowah, Tennessee, was only 150 miles. The defendant could have used other means of complying with his contract rather than to depend upon the mail. This letter was admissible.

(5) This ground assigns error because the court refused to permit the defendant to prove that his son was in possession of a half interest in the lands involved. In our view the court's ruling to the effect that possession of a tract of land could not be proved unless the deed was first introduced to show the possession is not sound as a principle of law. However, since this case sounded in the first count for breach of contract and in the second count for commissions, we do not see that this ruling by the court, under the facts of this case, is ground for a reversal. If the contract, or option, which the defendant gave the plaintiff, was a valid one (and we have so held), the plaintiff would be entitled to recover for a breach of that contract, regardless of whether his son was in possession. We do. not understand that it would be a defense to either count of the declaration that the defendant was unable to execute a marketable title. *Langford* v. *Berry*, 68 *Ga. App.* 193 (22 S. E. 2d, 349). The court did not commit reversible error in overruling this ground of the motion for any of the reasons assigned.

(6) This ground assigns error for the following reasons: "Tom Williams being on the witness stand and being cross-examined by Mitchell, of counsel for Smith, when the following occurred: Mr. Mitchell: 'Now you refer there that you are giving an option on the Bishop Farm, that is all the property that is described there, and that is what you were giving an option on.' Mr. Paschall: 'I object to that on the ground that the option itself would show what it was on.' The Court: 'I overrule the objection.' The court then permitted counsel for plaintiff to show by the witness that the Bishop Farm was the property optioned." As we have already stated, it was permissible for the plaintiff to show that the Bishop Farm was the property described in the declaration. He could prove this by the defendant as well as by anyone else. This ground contains no reversible error.

(7) Error is assigned in this ground because the court re-

quested the defendant, on cross-examination, to testify concerning the fact of making a deed to his son. We can not see how this could possibly have prejudiced the defendant. One of the reasons he assigns for not making the deed was that he had deeded a half interest to his son. The evidence shows that no such deed was of record. We think the plaintiff had a right to cross-examine the defendant concerning the fact of the existence of a deed. There is no merit in this assignment.

(8) Error is assigned here because the court erred, during the course of the trial, in propounding the following question to Dr. Hall (who was a witness for the plaintiff): "Question by the court: 'Dr. Hall, has there ever been a time between the present time and the time you executed that contract to purchase that farm that you would not take it if a deed had been made?' Answer: 'There was not.'" The errors assigned in this ground are: (a) That the so-called option relied upon by the plaintiff did not expire until April 19, 1943, and that Y. A. Henderson, as attorney for Dr. Hall, had written the defendant on March 10, 1943, that his client, Dr. Hall, wanted the transaction closed at once; and again on March 13, 1943, he wrote the defendant that unless the defendant had a deed in Calhoun, Georgia, by March 15, 1943, Dr. Hall would not take the land at all, and the deal would have to be called off. It is contended that under these particular circumstances it was prejudicial and harmful to the defendant sufficient to require a new trial; that the question was an attempt to bolster up the case of the plaintiff by giving the jury the impression that Dr. Hall would have taken the farm at any time; and that such question by the court was an invasion of the rights of the defendant. While the question was irrelevant and immaterial, we can not see, under the record of this case, that it was so harmful to the defendant as to require a new trial. The effect of the sales contract between Dr. Hall and the plaintiff Smith was that Dr. Hall was legally bound, through March 15, 1943, to accept a merchantable title to the property in question and to pay $7500 for it, and the evidence shows beyond question that the defendant was requested to make a deed to Dr. Hall before the 15th and was tendered the purchase-money. This the defendant refused or failed to do. This was not an issue at all. The evidence nowhere contends that Dr. Hall did not in good faith offer to buy the prop-

erty and that he was not ready, willing, and able to pay for it in accordance with the terms of his contract with the plaintiff Smith. There is no evidence coming from the defendant or otherwise sufficient to make an issue as to that. The contention of the defendant was that although his option expired on the 19th, he had an understanding with the plaintiff that in the event of a sale it would take some time to clear up the title. There was an issue as to this feature. Smith denied it. The jury evidently believed Smith. So if the assignment here be error, so far as the defendant was concerned it was harmless and does not require the grant of a new trial. We might state in this connection that it is one of the contentions of counsel for the defendant that since the option between the plaintiff and the defendant did not expire until April 19, 1943, the defendant could not legally be required to execute a deed before the expiration of April 19, and therefore the plaintiff had no right to demand that a deed be executed by the defendant on or before March 15, 1943, as stipulated in the contract of sale between Smith and Dr. Hall. We do not understand such to be the law. Where one executes to a broker an option to buy or sell a tract of land during a specific period, if the holder of the option during that period procures a purchaser ready, willing, and able to buy, and does actually offer to buy according to the terms of the option, and the giver of the option fails or refuses to execute a deed according to the terms of the option, he thereby becomes liable for the breach of his contract. This assignment contains no reversible error.

(9) Error is assigned here because, while the defendant was under cross-examination, the court permitted counsel for the plaintiff to propound the following question: "You asked Mr. Henderson to see Mr. Smith and that you would give Mr. Smith $100 to cancel the option, didn't you?" The objection argued to the answer to this question was that it was inadmissible in that it was in the nature of a compromise. The court overruled the objection. In view of the facts of this case, we are of the opinion that the overruling of the objection to the question propounded did not violate the provisions of the Code, § 38-408, to the effect that admissions or propositions made with a view to compromise are inadmissible. Under the facts here the offer on the part of the defendant to settle for $100 was an offer to settle and not a proposi-

tion to compromise. It is controlled by the principles laid down in *Teasley* v. *Bradley*, 110 *Ga.* 497 (6) (35 S. E. 782, 78 Am. St. R. 113), as follows: "An admission of liability contained in an offer to settle, brought about by a simple demand for settlement, is not inadmissible on the ground that such admission was 'made with a view to a compromise,' when there is nothing whatever to indicate that there has been any effort to compromise, and when it can not be inferred from the circumstances under which the offer was made that there has been such an effort." In this connection, also see *Hatcher* v. *Bowen*, 74 *Ga.* 840; *Cooper* v. *Jones*, 79 *Ga.* 379 (4 S. E. 916); *Akers* v. *Kirke*, 91 *Ga.* 590 (3) (18 S. E. 366). Under the facts of this case there was no offer of compromise. The plaintiff had made a demand for a deed, under the terms of his contract, and a mere counter-offer to pay $100 was not in the nature of a proposition made with a view to a compromise. However, if we may concede error here as alleged, in view of the evidence as a whole in this case we might very well say, as did Judge Bleckley in the case of *Akers* v. *Kirke*, supra: "There was enough legal evidence that such was the real truth of the case to uphold the verdict. That some illegal evidence was admitted does not render a new trial indispensable." There is no merit in this assignment.

Viewing the case as a whole, with due consideration to all the assignments of error, we conclude that the judgment should be, and is affirmed.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*