### 28692. PLANTATION LAND COMPANY v. BRADSHAW et al.

INGRAM, Justice.

This appeal is from a judgment of Cherokee Superior Court, in an action brought by the appellant, Plantation Land Company, against appellee, T. B. Bradshaw, seeking specific performance of an alleged contract for the sale of realty between Plantation as purchaser and Bradshaw as seller. Plantation appeals the trial court's judgment which granted Bradshaw's motions for judgment on the pleadings, for summary judgment and motions to dismiss and which denied Plantation's motion for summary judgment.

I.

Appellant has raised several issues for decision, but we need only consider the main issue of whether the

contract for sale of the realty is too vague and indefinite to sustain a claim for specific performance.

The description of the property in the contract was as follows: "[a] certain tract or parcel of land consisting of approximately 1650 acres and being in land lots . . . of the 15th District, Second Section of Cherokee County, Georgia, and being more particularly described on Exhibit 'A' annexed hereto and by this reference made a part hereof, said described property, as the same may be amended by the description from the survey to be obtained as provided herein, together with all improvements situated thereon and all rights, easements and appurtenances now or hereafter belonging thereto, herein called 'property,' excluding however, the residential dwelling occupied by the seller together with a tract of property not exceeding 10 acres selected by seller."

Exhibit "A" of the contract restated the land lots involved saying they were "more particularly shown on a drawing made for T. B. Bradshaw prepared by Lat Ridgeway, dated May 16, 1960, less seller's residence and not more than 10 acres of property to be selected by seller. A copy of said drawing being attached hereto and the property being outlined in red thereon, less and except parcels which have been sold out of the 'Setser' tract described in Exhibit 'A-2' hereto."

Paragraph 2 of the contract calls for a future survey (within 70 days of execution) to be made and agreed upon by both purchaser and seller, or to be determined pursuant to the provisions of that paragraph. Paragraph 2 concludes as follows: "The description from the final survey shall have removed therefrom the residential dwelling house of Seller together with not more than 10 acres thereon as may be designated by seller subject to the approval of purchaser, such approval not to be unreasonably withheld."

Paragraph 3 sets out the terms regarding the purchase price: "The purchase price of property shall be the product of $1,110 per acre times the number of acres established by the survey hereinabove referred to (excluding seller's dwelling house and lot) . . ."

Paragraphs 5 and 6 of the sales contract provide that

the seller, Bradshaw, would lease back most of the land subject to the sales contract except for 10 acres of land and his residence. The seller is to remain in the residence and live there for a given period of time and, under certain conditions, Plantation has an option to purchase Bradshaw's house and the 10 acres.

The thrust of appellant's argument is that the original contract, with the plat attached, provides the necessary "key" for identification and description of the subject property. Appellant urges that all the necessary elements of a contract are contained in the present agreement. The subject matter is approximately 1,650 acres that is described in the contract and shown on a plat. The price is $1,110 per acre. A survey is to be made by the purchaser to determine the exact number of acres involved in the sale.

## II.

We have concluded the trial court was correct in determining that the description of the land to be sold falls short of that necessary to sustain a decree for specific performance in two particulars. The first legal deficiency arises out of the plat referred to in the contract. Appellant claims that the plat, together with the contract, provides the necessary key for a sufficient description. However, a determination of the exact boundaries of the 1650 acres to be sold cannot be made, either from the plat alone or in conjunction with the contract. Indeed, the parties recognized this possibility by providing in the contract itself that the description may be "amended by the description from the survey to be obtained." This provision for amendment would seem to be essential to determine the land to be sold as there are several discrepancies between the original description and the final survey.[1]

---

[1] The subsequent survey included property in certain land lots which were not named in the legal description in the contract, nor included in the original drawing. Also, certain portions of other land lots included in the original drawing were deleted from the final description as provided by the survey.

Specific performance of a contract for the sale of land will not be granted unless the land is clearly identified. *Smith v. Georgia Industrial Realty Co.,* 215 Ga. 431 (2) (111 SE2d 37) (1959). A decree for specific performance operates as a deed. Code Ann. § 81A-170. Therefore, the decree should contain a description as definite as that required to support a deed. In *Laurens County Board of Education v. Stanley,* 187 Ga. 389 (200 SE 294) (1938), it was held that a provision for a subsequent survey could not cure an indefinite description in a deed. In that case, plaintiff sued to enjoin the board of education from moving a schoolhouse and cutting timber from certain land claimed by the plaintiff under a deed conveying property as follows: "Ten acres of land which is hereafter to be surveyed, leaving said schoolhouse in the center . . . being parts of two lots of land (No.) 93 and (No.) 94 of adjoining land of John W. Smith and others." The court held that this was not an adequate description.[2] Even by combining all of the descriptive elements recited in the present contract, including the referenced plat, it is not possible to locate the exact boundaries of the land sought to be conveyed, nor does the description provide a "key" which can be

---

[2] The court stated: "We are of the opinion that the deed in the instant case furnishes no key for the identification of the land intended to be conveyed, within the meaning of that term as used in the rules last stated. Such terms refer to a state of facts or circumstances existing at the time the deed is executed, and not to what may be the future intention of the grantor as may be expressed by acts or circumstances not already in existence at the time of the execution of the deed. Insofar as the identity of the land attempted to be conveyed is concerned, the key must lead to the establishment and the location of boundaries as of the time of the execution of the conveyance. *A survey to be made in the future does not do so. It cannot be said that a party intended to convey a certain tract of land when the deed shows on its face that the tract of land had not then any definite location or boundaries.*" (Emphasis supplied.)

explained or applied so as to provide a precise description of the property.

## III.

We also agree the trial court was correct in deciding that the description of the 10 acres of land to be excepted from the contract, but subject to the option to purchase, is legally insufficient. It must be borne in mind that Plantation has no obligation to exercise this option and if it is not exercised the land referred to in the option would never pass to Plantation. The description of the 10 acres, as provided in the option to purchase paragraph, is to be determined with reference to the provisions of the leaseback which in turn referred to the survey provided for in Paragraph 2 of the contract. Appellant, therefore, contends that the "key" to the certainty of the 10 acres was provided by (1) the survey to be made and (2) the fact that the ,seller was authorized to determine the shape of the 10 acres around his dwelling house. Appellant argues that any discrepancy with regard to the description of the 10-acre exception was obviated because at the proper time under the terms of the sales contract, Plantation would acquire all the land under the leaseback *and could acquire* the excluded land under the option. Thus, appellant strongly contends there can be no question as to what land was eventually to pass to Plantation because Plantation would have become owner of the land subject to the leaseback and could acquire the excluded land which was subject to an option. We do not agree, as the option created no obligation to purchase and the description of the property described therein is inadequate.

The land excluded from the sale, but subject to the option to purchase, was described in the contract variously as "Residential Dwelling occupied by seller together with a tract of property not exceeding 10 acres selected by seller" (Par. 1), "10-acre tract and the residential dwelling house located thereon" (Par. 6), "residential dwelling and the up to 10 acres removed from the property" (Par. 6).

Appellant cites numerous cases supporting the principle that land may be effectively described by

reference to the home-place of an individual. See *Penta Investments v. Robertson,* 230 Ga. 401 (197 SE2d 358) (1973); *Follendore v. Follendore,* 110 Ga. 359 (35 SE 676); *Reeves v. Whittle,* 170 Ga. 408, 409 (153 SE 53, 72 ALR 405).

## IV.

A clear and definite description of the land to be sold is necessary for the contract to satisfy the Statute of Frauds. Code Ann. § 20-401 (4); *Smith v. Wilkinson,* 208 Ga. 489 (67 SE2d 698) (1951). The contract, in the instant case, as executed, gives no definite indication of the size, shape or location of the "up to 10 acres" exception. In the cases of *Williams v. Manchester Building Supply Co.,* 213 Ga. 99 (97 SE2d 129) (1957), and *Smith v. Wilkinson,* supra, contracts for the sale of certain land, with exceptions for the vendor's residence and surrounding property which were to be selected later, were held unenforceable for vagueness and for lack of a written description sufficient to satisfy the Statute of Frauds.

We believe the description of the excepted property here is legally insufficient, and reach this conclusion despite appellant's effective argument that the descriptive wording of "residential dwelling" of the Seller is sufficient to identify the excepted land and thus the entire parcel to be sold. It is true that parol evidence may be used to explain terms appearing in the description, but the description itself must clearly identify a particular parcel of land. For example, where a description refers to a particular name for a piece of land, such as "The Humphrey Place," then parol evidence will be admitted to show that there does in fact exist a particular piece of property generally known by such name. *Knighton v. Hasty,* 200 Ga. 507 (37 SE2d 382) (1947); *Clark v. Cagle,* 141 Ga. 703 (2) (82 SE 21, LRA 1915A 317) (1914); *Williams v. Smith,* 71 Ga. App. 632 (31 SE2d 873) (1944). In such instances, the descriptive name is said to provide a "key" which may be explained by parol evidence. However, as observed in *Douglass v. Bunn,* 110 Ga. 159 (35 SE 339) (1900), "There is, however, a marked distinction between explaining an ambiguous description by parol evidence, and admitting parol evidence to supply a description." Id. p. 163.

Contracts which adequately describe the land to be sold are enforceable, even though they rely on subsequent surveys to determine the exact acreage involved in the sale. However, in order to meet the legal requirement for a definite description in writing, the key relied upon must be sufficient to provide identification by reference to extrinsic evidence which exists at the time that the contract is entered into by the parties. *Laurens County Board of Education v. Stanley*, 187 Ga. 389, 390 (200 SE 294) (1938). If the provision relied upon as a key is dependent on future acts or on extrinsic evidence not in existence at the time the contract is executed, it is insufficient. See *Brown v. Mitchell*, 225 Ga. 115, 117 (166 SE2d 571) (1969).

## V.

Appellant also argues that in fact a new survey was made subsequent to the execution of the present contract, as provided therein, and that since the appellee did not object to the survey in the prescribed time he has waived any objection. However, even if the seller (Bradshaw) has waived any objection to the survey, it is of little consequence. The new survey has no real legal significance to the problem created by the present description. The decree of specific performance would merely enforce the contract itself and not a new plat made subsequent to it. Since the description in the present contract and the attached plat are legally insufficient, the subsequent survey and new plat thereof cannot cure it. Appellant's reliance upon the case of *Penta Investments v. Robertson,* supra, does not require a different conclusion. In the *Penta* case, the property in question was sufficiently identified in the contract as "the Horace Robertson tract" and the seller had agreed to sell all of it except that portion south of New Hope Road. 230 Ga. 403. This property was capable of identification by extrinsic evidence in existence at the time the contract was executed and was not dependent on a future survey for a legally sufficient description. The subsequent survey was used solely to determine the exact acreage of the land to be sold in order to compute the total purchase price as the contract specified a certain price "per acre" for the land.

The trial court's judgment that the contract here involved is legally insufficient for enforcement through specific performance is affirmed.

*Judgment affirmed. All the Justices concur, except Gunter, J., who concurs in the judgment only, and Jordan, J., who dissents.*

ARGUED MARCH 11, 1974 — DECIDED JUNE 18, 1974 — REHEARING DENIED JULY 2, 1974.

*Moreton Rolleston, Jr.,* for appellant.

*Thomas A. Roach, Sutherland, Asbill & Brennan, Carey P. DeDeyn, D. R. Cumming, Jr., J. D. Fleming, Jr., John W. Bonds, Jr., H. Garland Head, III,* for appellees.

ON MOTION FOR REHEARING.

INGRAM, Justice.

We have considered appellant's arguments on motion for rehearing and conclude that the motion should be denied. Appellant vigorously restates his argument regarding the sufficiency of the original contract and attached plat to support a decree of specific performance. However, even if the fatal deficiencies inherent in the crayon-traced aerial photographs attached as a plat to the original contract could be overcome, other defects remain. The initially inadequate description, by the terms of the contract, is made dependent upon and subject to amendment by, a later survey from which all deeds and instruments were to be drawn. These defects, coupled with the failure of the contract to describe and adequately locate the "up to 10 acres" and the "seller's residence" (excepted from the land conveyed but subject to an option) render the original contract insufficient to support a decree for specific performance. Thus, we adhere to the judgment affirming the trial court.

*All the Justices concur, except Jordan, J., who dissents.*